**FILED**

**ORIGINAL** E-filing

JUL - 7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

**(PR)**

**TEH**

CV 08    3269

**STEVEN DALE BELL,**

Petitioner,

v.

**J. D. HARTLEY**, Warden,

Respondent.

No. _____

Evidentiary Hearing Requested

## BRIEF IN SUPPORT OF 28 U.S.C. §2254

## PETITION FOR WRIT OF HABEAS CORPUS



STEVEN D. BELL
Avenal State Prison
#J-69411, 120-236-L
P. O. Box 9
Avenal, CA 93204

Petitioner, *In Pro Se*

1

# **TABLE OF CONTENTS**

2

Page

3    TABLE OF AUTHORITIES    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

4    INTRODUCTION    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5    JURISDICTION AND VENUE    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

6    STATEMENT OF FACTS    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7    *A.    Commitment Offense*    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

8    *B.    Incarcerated Behavior*    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

9    *C.    2004 Parole Hearing*    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

10    STATEMENT OF PROCEDURAL FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

11    ARGUMENT    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

12    I.    STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

13    II.    BPH'S DETERMINATION THAT BELL <u>CURRENTLY</u>
14    POSES "AN UNREASONABLE RISK OF DANGER TO
15    SOCIETY" LACKS <u>ANY</u> EVIDENTIARY BASIS
16    (PC §3041)    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

17    III.    BPH FAILED TO SUPPORT ITS FINDING THAT THE
18    COMMITMENT OFFENSE WAS "CRUEL AND
19    CALLOUS" (15 CCR §2402(C)(1)) . . . . . . . . . . . . . . . . . . . . . . . . 11

20    *A.    "Dispassionate And Calculated"* . . . . . . . . . . . . . . . . . . . . . . . 14

21    *B.    "Callous Disregard For Human Suffering"* . . . . . . . . . . . . . . . 15

22    IV.    BPH'S SHIFTING CHARACTERIZATIONS OF THE
23    COMMITMENT OFFENSE DEMONSTRATE THAT
24    ITS DECISION HERE IS ARBITRARY . . . . . . . . . . . . . . . . . . . . . 16

V.     CONTINUED SOLE RELIANCE ON THE UN-
       CHANGING CIRCUMSTANCES OF BELL'S COM-
       MITMENT OFFENSE VIOLATES DUE PROCESS . . . . . . . . . . . .  18

VI.    TO THE EXTENT THAT BPH'S DETERMINATION
       RELIED UPON SO-CALLED "OTHER INFORMATION
       THAT BEARS ON UNSUITABILITY," SUCH RELIANCE
       VIOLATES DUE PROCESS WHERE THE INFOR-
       MATION WAS INACCURATE, UNRELIABLE, AND
       IRRELEVANT TO CURRENT DANGEROUSNESS . . . . . . . . . . .  20

       A.     Schroeder Report "Not Totally Supportive" . . . . . . . . . . . . . . .  21

       B.     Opposition Of Victim And Prosecutor . . . . . . . . . . . . . . . . . . . .  22

       C.     Bell's "Lack of Remorse" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

       D.     Bell's Closing Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

VII.   BPH ILLEGALLY DENIED PAROLE BASED ON
       BELL'S DECLINING TO DISCUSS THE FACTS OF
       THE COMMITMENT OFFENSE (15 CCR § 2236) . . . . . . . . . . . .  25

VIII.  BPH'S DECISION IN BELL'S CASE VIOLATES DUE
       PROCESS WHERE BASED ON EVIDENCE KNOWN
       TO HAVE NO "INDICIA OF RELIABILITY" . . . . . . . . . . . . . .  28

       A.     Schroeder Report Deficiencies . . . . . . . . . . . . . . . . . . . . . . . . .  29

       B.     Information Not Before The Panel . . . . . . . . . . . . . . . . . . . . . . .  32

       C.     Peer Review Of Schroeder Report . . . . . . . . . . . . . . . . . . . . . .  33

       D.     No Discussion Of Commitment Offense . . . . . . . . . . . . . . . . . .  34

IX.    BPH IGNORED OR UNREASONABLY NEGATED
       CODIFIED CIRCUMSTANCES TENDING TO SHOW
       SUITABILITY FOR PAROLE (15 CCR § 2402(d)) . . . . . . . . . . . .  37

//

X.   MAXIMUM TWO-YEAR DENIAL VIOLATES DUE
     PROCESS WHERE (1) SOLELY BASED ON
     *FACTORS IDENTICAL TO "UNSUITABILITY"*
     DETERMINATION AND (2) DEMONSTRABLY ARBITRARY  . 43

XI.  NO EVIDENCE SUPPORT'S BPH'S FINDINGS THAT
     MORE SELF-HELP AND A NEW PSYCHOLOGICAL
     EVALUATION ARE NEEDED . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

XII. BPH'S DECISION VIOLATES DUE PROCESS WHERE BASED
     ON AN ARBITRARY ACROSS-THE-BOARD POLICY TO
     DENY PAROLE AT ALL HEARINGS WHERE A VICTIM
     ATTENDS IN OPPOSITION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

CONCLUSION            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

VERIFICATION          . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

EXHIBITS (bound separately)

1

# **TABLE OF AUTHORITIES**

2

Page

3

Federal Cases

4   *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . 18,28

5   *Blockburger v. U.S.*, 284 U.S. 299, 52 S.Ct. 180 (1932) . . . . . . . . . . . . . . .   13

6   *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866 (1981) . . . . . . . . . . . . . . .   29

7
8   *Hayward v. Marshall*, 512 F.3d 536 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . .
    . . . . . . . . . . . . . . . . 7,8,11,12,18,19,20,21,22,50

9   *Irons v. Carey*, 505 F.3d 846 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . 7,12,37

10  *Irons v. Warden (Solano)*, 358 F.Supp.2d 936 (E.D.Cal. 2005) . . . . . . . . . . .   7

11
12  *Kentucky Department of Corrections v. Thompson*,
    490 U.S. 454, 109 S.Ct. 1904 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . .   44

13  *Lewis v. Mayle*, 391 F.3d 989 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . .   7

14  *Massie v. Henry*, 19 Fed.Appx. 585 (9th Cir. 20001) . . . . . . . . . . . . . . . . . .   13

15  *Martin v. Marshall*, 431 F.Supp.2d 1038 (N.D.Cal. 2006) . . . . . . . . . 16,24,39

16  *McQuillion v. Duncan*, 306 F.3d 895 (9th Cir. 2002) . . . . . . . . . . . . . . . . . .   22

17
18  *Rosenkrantz v. Marshall*, 444 F.Supp.2d 1063
    (C.D. Cal. 2006)        . . . . . . . . . . . . . . . . . . . . . . 15,17,18,23,38,44,46,51

19  *Superintendent v. Hill*, 472 U.S. 445, 105 S.Ct. 2768 (1985) . . . . . . . . . . 7,16

20  *Willis v. Kane*, 485 F.Supp.2d 1126 (N.D.Cal. 2007) . . . . . . . . . . . . . . . 18,19

21  *Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590 (1991) . . . . . . . . . . . . . .   7

22  //

1  | **State Cases**

2  | *In re Barker*, 151 Cal.App.4th 346, 59 Cal.Rptr.3d 746
3  |    (Cal.App. 1 Dist. 2007) . . . . . . . . . . . . . . . . . . . . . . . 13,14,21,22,28,47,50

4  | *In re Burns*, 136 Cal.App.4th 1318, 40 Cal.Rptr.3d 1
5  |    (Cal.App. 3 Dist. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

6  | *In re Capistran*, 107 Cal.App.4th 1299, 123 Cal.Rptr.2d 872
7  |    (Cal.App. 2 Dist. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

8  | *In re Caswell*, 92 Cal.App.4th 1017, 112 Cal.Rptr.2d 462
9  |    (Cal.App. 1 Dist. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

10 | *In re Dannenberg*, 34 Cal.4th 1061, 23 Cal.Rptr.3d 417
11 |    (Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,19,50

12 | *In re Dannenberg*, 102 Cal.App.4th 95, 125 Cal.Rptr.2d 458
13 |    (Cal.App. 1 Dist. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

14 | *In re De Luna*, 126 Cal.App.4th 585, 24 Cal.Rptr.3d 643
15 |    (Cal.App. 6 Dist. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 13,22,32,47,48

16 | *In re Fain*, 139 Cal.App.3d 295,188 Cal.Rptr. 653
17 |    (Cal.App. 1 Dist. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

18 | *In re Jackson*, 39 Cal.3d 464, 216 Cal.Rptr.760 (Cal.1985) . . . . . . . . . . . . 44

19 | *In re Lawrence*, 150 Cal.App.4th 1511, 59 Cal.Rptr.3d 537
20 |    (Cal.App. 2 Dist. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

21 | *In re Lee*, 143 Cal.App.4th 1400, 49 Cal.Rptr.3d 931
22 |    (Cal.App. 2 Dist. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,40,41

23 | *In re Scott*, 119 Cal.App.4th 871, 15 Cal.Rptr.3d 32
24 |    (Cal.App. 1 Dist. 2004) . . . . . . . . . . . . . . . . . . . . . . . 10,14,15,37,43,46

25 | *In re Smith*, 114 Cal.App.4th 343, 7 Cal.Rptr.3d 655
26 |    (Cal.App. 6 Dist. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

1  *In re Smith*, 150 Cal.App.4th 451 (Cal.App. 6 Dist. 2007) . . . . . . . . . . . . . . 9

2  *In re Sturm*, 11 Cal.3d 258, 113 Cal.Rptr.361 (Cal.1974) . . . . . . . . . . . . . . 12

3  *In re Viray*, ___Cal.App.4th___, 2008 DJDAR 5332
4      (Cal.App.4 Dist. 4/15/08) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

5  *In re Weider*, 145 Cal.App.4th 570, 52 Cal.Rptr.3d 147
6      (Cal.App. 6 Dist. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 12,21,22,33,38,42

7  *People v. Bland*, 28 Cal.4th 313, 121 Cal.Rptr.2d 546 (Cal.2002) . . . . . . . . 12

8  *People v. Parrish*, 170 Cal.App.3d 336, 217 Cal.Rptr.700
9      (Cal.App. 5 Dist. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

10  <u>Statutes and Regulations</u>

11  28 U.S.C. §84          . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

12  28 U.S.C. §1331        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

13  28 U.S.C. §2241        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

14  28 U.S.C. §2254        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,3,7

15  California Penal Code §§664/187 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,14

16  California Penal Code §3041 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,20,22

17  California Penal Code §3041.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20,44,47

18  California Penal Code §3043 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

19  California Penal Code §5011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25,28

20  California Penal Code §12022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

21  15 CCR §2030          . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

22  15 CCR §2042          . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,33

| | | |
|---|---|---|
| 1 | 15 CCR §2236 | . . . . . . . . . . . . . . . . . . . . 6,25,26,28,29,34,35,37,49 |
| 2 | 15 CCR §2245 | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49 |
| 3 | 15 CCR §2255 | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49 |
| 4 | 15 CCR §2402 | . . . . . . . . . . . . . . . . . 5,8,10,11,14,15,16,17,19,20, |
| 5 | | . . . . 21,22,23,24,26,28,34,38,39,40,41,42,43,50,53 |
| 6 | 15 CCR §2403 | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,13 |
| 7 | 15 CCR §2405 | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,30,42 |
| 8 | 15 CCR §2410 | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8 |
| 9 | D.O.M. §54060 | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30 |
| 10 | D.O.M. §62090 | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29,30 |

1    **STEVEN D. BELL**

2    *Avenal State Prison*
3    #J-69411, 120-236-L
4    P. O. Box 9
5    Avenal, CA 93204

6    *In Pro Se*

7

8

9    **UNITED STATES DISTRICT COURT**

10    **NORTHERN DISTRICT OF CALIFORNIA**

11

12

13    **STEVEN DALE BELL,**     No. _____

14           Petitioner,

15       v.       **BRIEF IN SUPPORT OF**
         **28 U.S.C. §2254 PETITION**

16    **J. D. HARTLEY**, Warden,    **FOR WRIT OF HABEAS CORPUS**

17         Respondent.    Evidentiary Hearing Requested

18

19

20

21      Petitioner STEVEN D. BELL, *in pro se*, respectfully submits the following

22    brief in support of his form 28 U.S.C. §2254 petition for writ of habeas corpus

23    alleging that the state parole board's 2006 denial of parole violated his rights to both

24    substantive and procedural due process.

25

*Bell v. Hartley* - Page 1

1

## INTRODUCTION

2    Petitioner, Steven Dale Bell ["Bell"], is a prisoner of the California Department

3    of Corrections and Rehabilitation ["CDCR"], serving an indeterminate sentence of

4    seven-to-life with the possibility of parole plus four years, pursuant to a 1995 jury

5    conviction for premeditated attempted murder (Penal Code ["PC"] §§664/187) in

6    Santa Clara County Superior Court (No. 95-177776).

7    After completing his four-year enhancement, Bell began serving the 7-to-life

8    term on January 3, 1997. With actual time imprisoned and earned credits, he has

9    served over 19 years on his total sentence, and over 15 years on his indeterminate

10   term, more than double the legally-required minimum term; his Minimum Eligible

11   Parole Date ["MEPD"] was January 3, 2004. Bell is now 53 years old, a model

12   prisoner with no disciplinary record, no prior criminal history, copious self-help

13   activities, and four consecutive "low risk" psychological assessments.

14   Bell's 2004 initial parole consideration hearing denied parole for two years

15   based solely on the commitment offense. At his 2006 second hearing, the subject of

16   this petition, the Board of Parole Hearings ["BPH"] again denied parole for two

17   years, the maximum in Bell's case, based solely on the commitment offense. PH

18   118:14-20.[1] *No evidence supports this.*

---

[1] "PH" refers to the 2006 parole hearing transcript (Exhibit A); "2004 PH" refers
to the 2004 transcript (Exhibit J). "Exhibit" refers to exhibits accompanying this
petition. "RT" refers to the trial Reporter's Transcript. Wherever possible,
references are in PAGE:LINE format; e.g., "118:14-20" here refers to page 118,

1    Where the facts of his crime can <u>never</u> change, where his "low risk" forensic

2    assessments can <u>never</u> be reduced, where his exemplary incarcerated behavior can

3    <u>never</u> improve, and where he has already served more than <u>double</u> his required

4    minium term and <u>beyond</u> the entire attempted murder "matrix" it is clear ***Bell can***

5    ***<u>never</u> parole without judicial intervention***.

6    ## JURISDICTION & VENUE

7    The district court has subject matter jurisdiction here pursuant to 28 U.S.C.

8    §§1331 and 2254.  This petition is properly before the Northern District where Bell

9    was convicted and sentenced in Santa Clara County.  28 U.S.C. §§84, 2241.

10    ## STATEMENT OF FACTS

11    *A.  Commitment Offense*

12    At the time of the commitment offense Bell was 39 years old, a 4-year college

13    graduate, employed as a computer consultant, and had no criminal history.  PH

14    20:13-17.  On the morning of August 15, 1994, Bell and his wife were alone in their

15    home.  RT 481-82, 485.  She sat on the end of their bed.  RT 521, 524-25, 1147-49.

16    The next thing she recalled was lying on the floor with a plastic bag across her face.

17    RT 524-26, 1154-57.  Bell removed the bag.  RT 106, 526, 528, 716-17, 1157.  He

18    helped her to stand, assisted her to the shower, put her to bed, then called 911 for

19    medical assistance.  RT 549, 732-33, 1159-60, 1171-72.

_____

lines 14 to 20.

1      Mrs. Bell sustained a superficial 4cm (1½") scalp laceration, without skull

2  fracture, intra-cranial swelling or bleeding. RT 826-7, 845. The examining

3  physician prescribed no pain medication, suggesting Tylenol for any discomfort. RT

4  556, 843. Mrs. Bell later claimed a related distortion of taste, but this was never

5  medically verified. RT 639, 643.

6      Bell was convicted of hitting Mrs. Bell once on the back of her head with a pipe

7  then placing a plastic bag over her face. RT 1629-39. The alleged motive was his

8  high level of stress from an emotional love triangle and fear of imminent discovery.

9  RT 1623-24, 1645; PH 68:15-22. Bell expressed profound remorse for the pain and

10  suffering he caused. Sentencing RT 16:26-27, 19:17-18; Exhibit $G^2$ pp. 21,22.

11  ***B. Incarcerated Behavior***

12      Bell is a model prisoner with a <u>perfect prison record</u>. He has <u>never</u> committed a

13  violent act, <u>nor</u> exhibited instability, cruelty, impulsiveness, or inappropriate

14  behavior; he is disciplinary free (no 115s/128s). PH 38:27-39:6. He has completed

15  <u>every</u> available institutional self-help program, sought outside self-improvement

16  programs, and completed three vocational courses. PH 39-43, 80-85, 86-87; Exhibit

17  C 5:14-8:1; L 5-6. Bell has received consistently <u>exceptional</u> performance

18  evaluations in  prison jobs, and many laudatory chronos from staff. PH 39-43;

[2] This and each subsequent exhibit is a true copy of the document identified, is
submitted under separate cover, and is incorporated by reference herein. Sub-
exhibits for Exhibits C and N are not included; where relevant to the issues herein,
these are submitted as separate Exhibits.

1   Exhibit C 4:5-12; Exhibit L 5-6.  He has never missed a day of work (no "A" days).

2   Exhibit C 4:2-3.  CDCR officials classify Bell as "low risk" and "not a management

3   concern" where his security level (Level II since 2001), his classification score (0

4   earned/19 administrative since 2000), and his custody designation (Medium A since

5   1996) are the *lowest possible* for a life-term prisoner.  PH 38:21-23.   Four

6   psychological evaluations conducted over eleven years all have found Bell to be

7   "low risk" of reoffending.  PH 46-2-3, 47:21-25, 88:21-89:26, 92:14-16; Exhibits D

8   p.4, E p.8, F p.3, H p.8.

9        In short, *absolutely no post-conviction evidence* supports BPH's parole denial.

10   *C.  2004 Parole Hearing*

11        At Bell's 2004 initial parole hearing, BPH denied parole solely on the

12   commitment offense.  Exhibit J 1:14-16.  The panel explicitly negated all other

13   unsuitability circumstances.  Exhibit J 2:17-25.

14        BPH found that the crime met every subfactor under 15 CCR §2402(c)(1)

15   "Commitment Offense" except "Multiple Victims."  Exhibit J 1:20-23, 2:1-8.  The

16   panel imposed the maximum two-year denial on *exactly* the same grounds.  Exhibit

17   J 6:10-18, 6:24-25.  Despite abundant evidence supporting *every suitability factor*

18   under 15 CCR §2402(d), BPH acknowledged only four: (1) "No Juvenile Record",

19   (2) "Stable Social History", (6) "Lack of Criminal History", and (9) "Institutional

20   Behavior."  Exhibit J 2:17-3:4.

21        On the advice of counsel, Bell stipulated to the record but otherwise declined to

1    discuss the facts of the offense under 15 CCR §2236.  Consequently, BPH

2    unreasonably found Bell's "insight...was grossly lacking."  Exhibit J 7:1-2.  This

3    was the Board's "greatest, greatest concern."  Exhibit J 9:11-12.

4        Bell has an appeal pending in the U.S. Ninth Circuit (08-15559) stemming from

5    this 2004 hearing.

6    **STATEMENT OF PROCEDURAL FACTS**

7        On April 23, 2007, Bell filed a habeas petition in Santa Clara County Superior

8    Court (177776).  By short order dated May 15, 2007, the court summarily denied

9    Bell's petition citing *Dannenberg* without addressing specific claims, and without

10    an evidentiary hearing or briefing by respondent.  Exhibit S.

11        On July 11, 2007, Bell filed a habeas petition in the California Court of Appeal,

12    Sixth Appellate District (HO31773).  By unexplained order dated August 2, 2007,

13    the court denied Bell's petition without an evidentiary hearing or briefing by

14    respondent.  Exhibit T.

15        On September 21, 2007, Bell filed a habeas petition in the California Supreme

16    Court (S156519).  By unexplained order dated March 12, 2008, the court denied

17    Bell's petition without an evidentiary hearing or briefing by respondent.  Exhibit U.

18    //

19    //

20    //

21    //

1

## ARGUMENT

2

## I. STANDARD OF REVIEW

3      Because Bell's petition is governed by the provisions of the A.E.D.P.A., this

4  Court cannot grant a writ of habeas corpus unless the state court's adjudication of

5  his due process claims were contrary to, or an unreasonable application of,

6  established Supreme Court authority.  28 U.S.C. §2254(d).

7      Where both the California Supreme Court and Court of Appeal denied Bell's

8  claims without explanation, this Court must "look through" these orders to the

9  Superior Court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 804, 111 S.Ct. 2590,

10  2595 (1991).  However, in this case "looking through" to the Superior Court reveals

11  only a *pro forma* "short order" which does not qualify as a "reasoned opinion"

12  under A.E.D.P.A., necessitating an independent review of the record. *Irons v.*

13  *Warden*, 358 F.Supp.2d 936, 940 (E.D.Cal. 2005) overturned on different grounds.

14  Further, where the boilerplate language of this "short order" did not reach Bell's

15  procedural due process claims, *de novo* review of these is appropriate. *Lewis v.*

16  *Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

17      In the parole context, due process is satisfied if "some evidence" supports the

18  decision and it is not "otherwise arbitrary." *Superintendent v. Hill*, 472 U.S. 445,

19  447, 105 S.Ct. 2768, 2775 (1985) ["*Hill*"].  The "some evidence" analysis is framed

20  by California authority. *Irons v. Carey*, 505 F.3d at 846, 851 (9th Cir. 2007)

21  ["*Irons*"]; *Hayward v. Marshall*, 512 F.3d 536, 542 (9th Cir. 2008) ["*Hayward*"].

1    "California courts have made clear that the findings that are necessary to deem a

2    prisoner unsuitable for parole are not that a particular factor or factors indicating

3    unsuitability exist, but that a prisoner's release will unreasonably endanger public

4    safety." *Id*, at 543 (cit.omitted).

5

## II. BPH'S DETERMINATION THAT BELL <u>CURRENTLY</u> POSES "AN UNREASONABLE RISK OF DANGER TO SOCIETY" LACKS <u>ANY</u> EVIDENTIARY BASIS (PC §3041)

9    California law <u>presumes</u> that, after serving a required minimum term, a prisoner

10    is suitable for parole unless s/he would <u>currently</u> pose an unreasonable risk of danger

11    to society. PC §3041; 15 CCR §2402(a); *Hayward*, 512 F.3d at 542-43. To

12    overcome this presumption, BPH must point to "some evidence" that a prisoner

13    poses a <u>continuing</u> danger to the public. *Ibid.* In short, **"[A] determination of**

14    **unsuitability is simply shorthand for a finding that a prisoner *currently* would**

15    **pose an *unreasonable risk* of danger if released *at this time*."** *In re Smith*, 114

16    Cal.App.4th 343, 370, 7 Cal.Rptr.3d 655, 676 (Cal.App. 6 Dist. 2003)

17    (emph.added). *<u>No</u> evidence points to Bell's current threat to public safety. Indeed,*

18    *overwhelming uncontroveted evidence indicates he is not a danger in any way.*

19    Bell completed his required 7-calendar-year minimum term and all enhancements

20    on January 3, 2004. At the time of the instant 2006 hearing, with earned good

21    conduct credits pursuant to 15 CCR §2410, Bell had served more than 13 years on

1    his 7-to-life term (more than 17 years total).[3]  Having more than satisfied the legal

2    requirements of his sentence, Bell could only be denied parole if he remained an

3    unreasonable danger to society.  See Argument V.

4        The state trial judge, the official most familiar with the evidence in this case and

5    with the facts fresh in his mind, found Bell's crime to be situational due to the stress

6    of an emotional love triangle (Exhibit I 2:6, 2:15-19),  *explicitly finding Bell to be*

7    *low risk of future danger to society*:

8            "I do not perceive him, other than in this instant case, as being a
9            man of violence.  And it's unlikely, in my opinion, absent some
10           unusual circumstances, that he will be reoffending in the
11           future." Exhibit I 1:16-20

12   Likewise, the trial court Probation Officer's Report does not suggest any future risk

13   upon release.  While BPH acknowledged its obligation to "accept as true the findings

14   of the court" (PH 8:23-24), it completely ignored these low-risk findings.

15       Four psychological evaluations all found Bell to be "low risk:"

16           "Mr. Bell does not represent a current threat to his wife or to
17           the community at large."  (Dr. Koller, 1995)   Exhibit D p.4.

18           "Risk assessment measures suggest that the inmate poses a low
19           likelihood to become involved in a violent offense if released
20           into the free community."  (Dr. Walker, 2002)  Exhibit E, p.8.

---

[3] Note that on April 3, 2008, prior to filing this petition, Bell exceeded the
maximum 15-year term on the Attempted Murder Matrix.  15 CCR §2403(d);
Exhibit K.  Bell's imprisonment in excess of his prescribed matrix term reduces his
period of parole.  *In re Smith*, 150 Cal.App.4th 451 (Cal.App. 6 Dist. 2007) *after
rehearing* 2007 WL 2484107 at *3 (holding unchanged) *reviewed denied* California
Supreme Court #S156607 12/12/07.

1
2

> "His risk of harm to others is below average for [the] parolee
> population." (Dr. Schroeder, 2005) Exhibit F p.3.

3
4
5

> "His risk for criminal behavior or re-offense is very low...There
> are no factors in this case that would indicate that he is a danger
> to society in any way." (Dr. Macomber, 2006) Exhibit H p.8.

6   Bell's Life Prisoner Evaluation Report, prepared by CDCR noted that the

7   offense "was committed during or due to an unusual situation, [un]likely[4] to

8   reoccur." Exhibit L, p. 2. BPH refused to consider this information, a violation of

9   15 CCR §2402(b). PH 25:24-26:3.

10   That Bell poses *no* risk to society is further supported by: (1) fourteen years of

11   disciplinary-free programming (PH 38:27-39:6) in "an environment in which it is

12   quite easy to get written up purely by accident." *In re Scott*, 119 Cal.App.4th 871,

13   881, 15 Cal.Rptr.3d 32, 38 (Cal.App. 1 Dist. 2004)["*Scott*"]; (2) the uncharacteristic

14   and situational nature of the commitment offense, with no problematic behavior

15   before or since. *Id.* at 881-82, 15 Cal.Rptr.3d at 38; (3) Bell's copious self-help

16   efforts throughout his incarceration, including every available in-prison program and

17   self-initiated outside programs (PH 80-87, 119:2-3; Exhibits C 6:9-8:1; L 5-6); and,

18   (4) thirty-eight support letters from pillars of society attesting to his rehabilitation

19   (PH 26-34; Exhibit C 11:6-13 fn.9). Bell qualifies for all suitability circumstances

20   under 15 CCR §2402(d) except "Battered Woman Syndrome." See Argument IX.

---

[4] Due to a clerical error, this reads "*as* likely" instead of "*un*likely"; see correct
language at 15 CCR §2405(a)(6). Bell's counsel attempted to correct this (PH 13:8-
10) but BPH refused (PH 25:24-26:3).

1    There is <u>no</u> contrary evidence  Reversal is required.

2

## III.  BPH FAILED TO SUPPORT ITS FINDING THAT
## THE COMMITMENT OFFENSE WAS "CRUEL
## AND CALLOUS" (15 CCR §2402(c)(1))

6    Regulations identify six unsuitability circumstances to aid BPH's determination

7    of whether a prisoner is currently dangerous.  15 CCR §2402(c); *Hayward*, 512 F.3d

8    at 543.  In Bell's case, BPH found that only <u>one</u> of these applied: 15 CCR

9    §2402(c)(1)  "*Commitment Offense.  The prisoner committed the offense in an*

10   *especially heinous, atrocious, or cruel manner.*"[5]  PH 118:16-18.  The current panel

11   did not mention, and the 2004 panel explicitly negated, all other unsuitability

12   circumstances, none of which applies here.  Exhibit J 2:17-25.  Of the five subfactors

13   listed under "Commitment Offense", the panel cited only two: (B) "dispassionate and

14   calculated" and (D) "callous disregard for human suffering."  PH 118:18-20.  (See

15   III.A. and III.B., *infra*).  ***There is <u>no</u> evidence to support either of these findings***

16   ***<u>nor</u> the ultimate requirement of current dangerousness.***

17   While parole may be denied based solely on the commitment offense, BPH

18   ***"must <u>point to factors</u> beyond the minimum elements of the crime"*** and state how

---

[5] BPH did not find the offense <u>especially</u> cruel.  PH 118:16-18.  The legal standard "is not general notions of common decency or social norms" but whether, <u>among attempted murders</u>, the instant offense was "*particularly* heinous, atrocious, or cruel."  *In re Lee*, 143 Cal.App.4th 1400, 1409, 49 Cal.Rptr.3d 931, 937 (Cal.App. 2 Dist. 2006) ["*Lee*"] (emph.added).  Evaluating Bell's offense against a lower standard violates due process.

1    such factors are relevant to a prisoner's "***continuing danger to the public***." *In re*

2    *Dannenberg*, 34 Cal.4th 1061, 1071, 1084, 23 Cal.Rptr.3d 417, 421, 431 (Cal.

3    2005) ["*Dannenberg*"]; *Hayward*, 512 F.3d at 543, 545; *Irons*, 505 F.3d at 852.

4    Every crime will have unique facts; merely reciting these facts, as BPH did here (PH

5    118:22-25), as a prelude to expressions of moral outrage, does <u>not</u> amount to "some

6    evidence" of a *current risk to public safety. Ibid.*; *In re Weider*, 145 Cal.App.4th

7    570, 588, 52 Cal.Rptr.3d 147, 160 (Cal.App. 6 Dist. 2006) ["*Weider*"].

8        In Bell's case, BPH did not specify what it was about the offense that exceeded

9    the minimum elements of attempted murder, nor why or how this indicated current

10    dangerousness.[6]  The *Dannenberg* requirement that BPH <u>point on the record</u> to the

11    particular circumstances indicating dangerousness "is indispensable to a due process

12    review." *In re Sturm*, 11 Cal.3d 258, 269, 113 Cal.Rptr. 361, 368 (Cal. 1974) [must

13    set forth basis for denial with "sufficient specificity to permit meaningful review"].

14        BPH failed to point to particular circumstances here because ***no factor exists***

15    ***beyond the minimum element of the crime for which Bell was convicted.***   The

16    "minimum elements" of attempted murder are an intent to commit the murder plus a

17    direct but ineffectual act toward its commission.   The crime "requires no physical

18    injury to the victim." *People v. Bland*, 28 Cal.4th 313, 328-9, 121 Cal.Rptr.2d 546,

19    //

---

[6] The state court decisions are similarly flawed.  Exhibits S, T, U.

1    558. (Cal. 2002).  Nor is the use of a weapon required.[7]  Bell's commitment

2    offense met, but *did not exceed*, the minimum elements of attempted murder.

3        Neither the trial court nor the probation report suggested that Bell's crime was

4    especially egregious.  Further, according to the Board's own matrix for setting base

5    terms once a prisoner is found suitable for parole, the facts place Bell's offense

6    *below the midrange* of attempted murders (15 CCR §2403(d), Row II, Column B;

7    Exhibit K).  *In re DeLuna,* 126 Cal.App.4th 585, 593, 24 Cal.Rptr.3d 643, 649

8    (Cal.App. 6 Dist. 2005) ["*DeLuna*"];  *Barker*,151 Cal.App.4th at 373, 59

9    Cal.Rptr.3d at 766.

10       Was the attack callous?  Yes, *as are all attempted murders*.  Do the facts

11   distinguish this crime as *especially* callous or cruel beyond the "minimum elements"

12   of attempted murder sufficient to indicate *current dangerousness*?  No.

13   //

---

[7] While it might at first appear that Mrs. Bell's injury exceeds the "minimum elements of the crime," such is not the case where a three-year GBI enhancement was imposed under PC §12022.7, which "punishes the actual infliction of great bodily injury...an element not required for [attempted murder]." *People v. Parrish*, 170 Cal.App.3d 336, 343, 217 Cal.Rptr. 700, 704 (Cal.App. 5 Dist. 1985); *Massie v. Henry*, 19 Fed.Appx. 585, 586 (9th Cir. 2001); *Blockburger v. U.S.*, 284 U.S. 299, 52 S.Ct. 180 (1932).  To increase punishment based on the injury violates the Fifth Amendment prohibition against multiple punishment for the same offense.

The same holds true for the only other potentially "excessive" factor, use of a weapon under PC§12022(b), for which Bell received a one-year enhancement.  See *In re Barker*, 151 Cal.App.4th 346, 374, 59 Cal.Rptr.3d 746, 766 (Cal.App. 1 Dist. 2007) ["*Barker*"].  [prohibits parole denial based on "dual use" of facts which impose separate sentence].

1  **A.  *"Dispassionate and Calculated"***

2       The first of two subfactors cited by BPH in support of its "cruel and callous"

3  finding was 15 CCR §2402(c)(1)(B): "*The offense was carried out in a*

4  *dispassionate and calculated manner, such as an execution-style murder*."  PH

5  118:18-19.

6       Bell was convicted of *premeditated* attempted murder (PC §§664/187).  Exhibit

7  L p.1.  Premeditation is <u>defined</u> as "committed in a 'calculated' manner."  *Scott*, 119

8  Cal.App.4th at 890, 15 Cal.Rptr.3d at 44.  It was precisely this "minimum element"

9  of the commitment offense which resulted in Bell's seven-to-life sentence; without

10  this, his term would have been <u>fixed</u> at seven years and *he <u>never</u> would have*

11  *appeared before BPH at all!*

12        "And, in any case, the fact that a murder was premeditated and
13        deliberate does not tend to show it was 'carried out in a
14        dispassionate and calculated manner, such as an execution-style
15        murder.'" *Id.*, at 895 fn.14, 15 Cal.Rptr.3d at 48.

16       There is <u>no</u> evidence that Bell was dispassionate; on the contrary, the record

17  reveals he was under a unique level of emotional stress at the time.[8]  This was not an

18  "execution-style murder" and BPH <u>does not specify</u> what evidence it relied upon in

19  reaching it's finding.

_____

[8]  A factor <u>favoring</u> parole.  See Argument IX.  Even if, *arguendo*, Bell outwardly
behaved "normal" immediately before the offense, California authority rejects
application of this subfactor.  See *Barker*, 151 Cal.App.4th at 372-73, 59
Cal.Rptr.3d at 765-66 [eating meal and watching television with victims before
premeditated attack was not "dispassionate and calculated"].

1    The facts do not distinguish this crime from the "minimum elements" required to

2    sustain Bell's conviction and sentence, and do not imply current dangerousness

3    **B.    *"Callous Disregard For Human Suffering"***

4    The second and final subfactor cited by BPH in support of its "cruel and callous"

5    finding was 15 CCR §2402(c)(1)(D):   *"The offense was carried out in a manner*

6    *which demonstrates an exceptionally callous disregard for human suffering."*  PH

7    118:19-20.[9]

8    Once again, BPH <u>does not specify</u> how Bell exhibited this supposed *callous*

9    *disregard* for Mrs. Bell's suffering beyond the "minimum elements" of attempted

10   murder.  Malice, acting with callous disregard for human life, is a "minimum ele-

11   ment" of this offense.  But this subfactor "contemplates that the victim was made to

12   suffer in some exceptional way."  *Rosenkrantz v. Marshall*, 444 F.Supp.2d 1063,

13   1082-83 (C.D.Cal 2006) ["*Rosenkrantz*"].   *"<u>Gratuitous cruelty</u>" is required.  Scott*,

14   119 Cal.App.4th at 891, 15 Cal.Rptr.3d at 46 (emph.added).  The defendant must

15   have "*committed the crime* in a manner that demonstrated an exceptionally callous

16   disregard for human suffering...such as taunting or torturing the victim."  *In re Viray*,

17   ___Cal.App.4th ___, 2008 DJDAR 5332, 5335 (Cal.App. 4 Dist. 4/15/08) ["*Viray*"]

18   (orig.emphasis).  **There is <u>no</u> such evidence here.**

─────────────────────

[9] The panel again failed to apply the correct legal standard, finding only that the offense demonstrated a "callous disregard," not <u>exceptionally</u> so, negating application of this subfactor to deny parole.

1    There is <u>no</u> evidence that Bell gratuitously increased Mrs. Bell's suffering, nor

2    that she suffered more than what would be inherent in any attempted murder. He did

3    not "taunt or torture" her, nor "gratuitously" increase or prolong her suffering.

4    Indeed, Bell did not proceed when she was helpless; instead, he removed the plastic

5    bag from her face, helped her to clean-up, put her in bed, attempted to render first

6    aid, called 911 for assistance, and remained beside her until emergency personnel

7    arrived. ***These are <u>not</u> callous actions.***[10]

8    The facts simply do not support BPH's finding of a "callous disregard for human

9    suffering," much less <u>exceptionally</u> so, and nothing indicates any current risk to

10   public safety.

11

## IV. BPH'S SHIFTING CHARACTERIZATIONS
## OF THE COMMITMENT OFFENSE DEMONSTRATE
## THAT ITS DECISION HERE IS ARBITRARY

16   Parole decisions may not be arbitrary. *Hill*, 472 U.S. at 447, 105 S.Ct. at 2775.

17   But here:

18           "The arbitrariness of the decision in petitioner's case is
19           highlighted by the flip-flopping characterizations of
20           petitioner's crime...in different hearings, different panels have
21           used different parts of the regulations to describe petitioner's
22   //

---

[10] In fact, these actions are clear indications of remorse under 15 CCR §2402(d)(3) which the panel unreasonably ignored. *Martin v. Marshall,* 431 F.Supp.2d 1038, 1046 (N.D.Cal. 2006) ["*Matin*"]; 15 CCR §2402(d)(3). See Argument IX.

1     crime"[11]. *Rosenkrantz*, 444 F.Supp.2d at 1082-83.

2       As set forth in the following table, BPH in 2004 characterized Bell's offense as

3 meeting <u>every</u> subfactor under 15 CCR §2402(c)(1) "Commitment Offense" except

4 multiple victims, while at the instant 2006 hearing BPH applied <u>only two</u> of these:

| Subfactors | 2004 Hearing | 2006 Hearing |
|---|---|---|
| (A) Multiple Victims | N/A | N/A |
| (B) Dispassionate and Calculated | Exhibit J 1:20-22 | PH 118:18-19 |
| (C) Victim Abused | Exhibit J 1:22-23 | N/A |
| (D) Exceptionally Callous Disregard For Human Suffering | Exhibit J 2:5-6 | PH 118:19-20 |
| (E) Motive Was Inexplicable/Trivial | Exhibit J 2:6-8 | N/A |

13       The facts of Bell's offense did not change between these two hearings; *these*

14 *are immutable*. If the victim was "abused" in 2004, how could she not be now? If

15 Bell's motive was inexplicable or trivial in 2004, how could it not be now?

16       Even if, *arguendo*, "some evidence" supported <u>any</u> commitment offense

17 subfactors (which it does not, see Argument III), BPH's shifting characterizations

18 amply demonstrate impermissible arbitrariness. Bell's liberty interest in parole thus

19 hinges on the *luck of the draw*, that perhaps some future panel will opine that these

20 subfactors do not apply. Compelling due process to hinge on such an arbitrary

21 possibility is not due process at all.

---

[11] Even more arbitrary, here the *same* panel in the *same* hearing used different parts of the regulation to describe Bell's offense. See Argument X.

1    The panel's findings here were arbitrary.  Reversal is required.

2

### V. CONTINUED SOLE RELIANCE ON THE UNCHANGING
### CIRCUMSTANCES OF BELL'S COMMITMENT OFFENSE
### VIOLATES DUE PROCESS

6    While a prisoner's commitment offense might *initially* satisfy the "some

7    evidence" requirement for denying parole, continued reliance on this  unchanging

8    factor could violate due process violation where, as here, the prisoner demonstrates

9    "exemplary behavior and evidence of rehabilitation." *Biggs v Terhune*, 334 F.3d

10    910, 916 (9th Cir. 2003) ["*Biggs*"].  Using the commitment offense to deny parole

11    must be predicated on the *predictive value* of the unchanged circumstance.

12    *Hayward*, 512 F.3d at 546; citing  *Rosenkrantz*, 444 F.Supp.2d at 1084.  But the

13    weight attributable to the crime "should decrease over time as a predictor of future

14    dangerousness." *Willis v. Kane*, 485 F.Supp.2d 1126, 1130 (N.D.Cal. 2007)

15    ["*Willis*"] citing *Biggs* and *Irons*.

16    Bell has been denied parole twice since completing his required minimum term

17    on January 3, 2004.  Whatever predictive value Bell's commitment offense might

18    have had 14 years ago has dissipated given his exemplary prison record and

19    rehabilitation over the ensuing years, his acceptance of responsibility and expressions

20    of remorse, and the complete absence of <u>any</u> contrary evidence indicating

21    dangerousness.

22    It is not merely the passage of time nor exceeding his MEPD that deprives Bell's

*Bell v. Hartley* - Page 18

1   offense of its predictive value, but the *exceptional quality* of that time.  *Willis*, 485

2   F.Supp.2d at 1130, 1135.

3       *In __no other case__* where the courts vacated parole denials were those prisoners'

4   post conviction records better than Bell's (e.g., *Hayward, Willis, Rosenkrantz, Scott,*

5   *Lee, Viray,* all *supra*).  Indeed, the prisoners in several such cases have engaged in

6   __serious__ *postconviction misconduct* involving drugs, gangs, and/or violence (e.g.,

7   *Martin, Barker, Smith,* all *supra*).

8       The nature of Bell's offense is likewise less egregious than __any__ of these cases,[12]

9   each of which resulted in at least one death, and several the killing and/or wounding

10  of bystanders (e.g., *Martin, Lee, Weider,* all *supra*).[13]  Bell has served proportionally

11  __*longer*__ *on his sentence* (15 years on 7-to-life) and *farther __beyond__ his minimum term*

12  (8 years beyond MEPD) than many other prisoners where the courts reversed parole

13  denials based on the offense, e.g. *Willis* [served 19 years on 15-to-life, 7 years

14  beyond MEPD], *Lee* [served 17 years on 17-to-life, 6 years beyond MEPD]; and

15  //

16  //

_____

[12] Note that attempted murder is the *least serious* of California's life-top offenses
and carries the *lowest* required minimum term, i.e., 7 years.

[13] While *Dannenberg* does not require comparisons to other cases for the purpose
of term uniformity (34 Cal.4th at 1080, 23 Cal.Rptr.3d at 428), it does not prohibit
all comparisons.  Indeed, factual comparisons are *required* by the regulations to
determine whether a crime was "*especially* heinous" or "*exceptionally* callous."  15
CCR §2402(c).

1    *Martin* [served 23 years on 20-to-life, 5 years beyond MEPD].[14]  Whether focusing

2    on the nature of his offense or on the elapsed years since it occurred, *Bell is at least*

3    *as deserving* as the above prisoners where parole denials were reversed by the courts

4    in *Hayward, Rosenkrantz, Martin, Scott, Lee, Barker,* and *Smith* among others.

5        Even without comparisons to other cases, it is clear that the nature of Bell's

6    offense, after 14 actual years (19 constructive years) of exemplary conduct and

7    rehabilitation, is not "some evidence" his release will unreasonably threaten public

8    safety.  Reversal is required.

9

10   **VI.  TO THE EXTENT THAT BPH'S DETERMINATION**
11   **RELIED UPON SO-CALLED "OTHER INFORMATION**
12   **THAT BEARS ON UNSUITABILITY," SUCH RELIANCE**
13   **VIOLATES DUE PROCESS WHERE THE INFORMATION**
14   **IS UNRELIABLE, INACCURATE, AND IRRELEVANT**
15   **TO CURRENT DANGEROUSNESS**

16       The only regulatory factor relied upon by BPH to deny parole was 15 CCR

17   §2402(c)(1) "Commitment Offense."  However, in its decision the panel articulated

18   so-called "other information that bears on [Bell's] unsuitability."  PH 119:26.  The

19   panel did not specify to what extent it  relied upon this "other information"[15] but, as

_____

[14]  It is irrelevant that these prisoners had more BPH hearings than Bell.  Had BPH
followed the requirements of PC §§3041 and 3041.5, Bell's fifth hearing was due in
January, 2007.  BPH cannot indemnify unsupported denials simply by illegally
delaying hearings.

[15] Note that BPH interspersed this "other information" among regulatory factors as
though all were considered equally.

1    set forth below, <u>any</u> such reliance violated Bell's due process rights.

2    *A.  Schroeder Report "Not Totally Supportive"*

3    As set forth *supra*, California's sole statutory parole determinant is a prisoner's

4    current dangerousness. *Hayward*, 512 F.3d at 543. But here, BPH held that the

5    2005 mental health assessment by  psychologist C.Schroeder (Exhibit F) was "not

6    totally supportive of release" (PH 119:9-14) while *<u>ignoring</u> the overall conclusion*:

7    *"His risk of harm to others is <u>below average</u> for [the]*
8    *parolee population."*  Exhibit F p.3 (emph.added).

9    The regulatory standard for unsuitability based on psychological factors is "*a*

10    *lengthy history of severe mental problems related to the offense.*" 15 CCR

11    §2402(c)(5).  This does <u>not</u> apply to Bell.

12    **The <u>only</u> consideration here is whether Bell poses *a current unreasonable***

13    ***risk to public safety*; by this standard, *the Schroeder report's "below average"***

14    ***assessment <u>is</u> totally supportive*.**[16]

15    Even <u>if</u> the report's other suggestions were accurate (which they are not, see

16    Argument VIII), these clearly were insufficient to disturb the overall "*below*

17    *average*" risk assessment, and are thus *<u>irrelevant</u> to suitability*.  See *Barker*, 151

18    Cal.App.4th at 375-76, 59 Cal.Rptr.3d at 768 ["not totally supportive" finding is

19    "<u>inaccurate</u> [when] overall conclusion...was in the low range"]; *Weider*, 145

---

[16] All four psychological assessments in the record have found Bell to be *<u>low risk</u> to public safety*.  Exhibits D p.4, E p.8, F p.3, H p.8.

1  Cal.App.4th at 585, 52 Cal.Rptr.3d at 158 [psychological report recommending

2  substance abuse treatment did not negate "low risk" assessment nor justify parole

3  denial]; *DeLuna,* 126 Cal.App.4th at 596-7, 24 Cal.Rptr.3d at 651-2 [needing "more

4  insight" into crime did not indicate risk to public safety]; *McQuillion v. Duncan*, 306

5  F.3d 895, 910 (9th Cir. 2002) [diagnosed anxiety disorder "not relevant to public

6  safety"].

7  Further, BPH acknowledged that Bell's most current assessment (Dr. Macomber

8  2006; Exhibit H) *is totally supportive*. PH 119:14-15. It is unreasonable to rely on

9  *earlier* reports as evidence of *current* dangerousness.

10  To whatever extent BPH relied upon the Schroeder report as "not totally

11  supportive" of Bell's unquestionable parole suitability, such reliance violated due

12  process where contrary to the "low risk" assessment.

13  ### B.  *Opposition Of Victim And Prosecutor*

14  The panel next stated "the District Attorney...and...your victim" oppose parole.

15  PH 119:21-25. Although BPH is required to consider such opposition (PC §§3041,

16  3043), this is not a regulatory factor under 15 CCR §2402 upon which parole may be

17  denied. "[T]he effect on the victim is not, and cannot be, the guiding factor in a

18  parole hearing, especially as it is not even mentioned as an unsuitability factor."

19  *Barker*, 151 Cal.App.4th at 375, 59 Cal.Rptr.3d at 767-68; *Weider*, 145 Cal.App.4th

20  at 590, 52 Cal.Rptr.3d at 161. Such opposition "cannot be considered 'some

21  evidence' under *Hill* to deny parole." *Hayward*, 512 F.3d at 545 fn.9.

1    Further, the oppositions of the victim (PH 109:24-116:8) and prosecutor (PH

2    67:14-74:17) were based solely on the unchanging facts of the commitment offense,

3    and thus "merely cumulative of the [panel's] own determination regarding the

4    callousness of the crime." *Rosenkrantz,* 444 F.Supp.2d at 1080 fn.14.  Mrs. Bell

5    stated her intention to forever oppose parole based solely on the offense (PH 112:13-

6    15) regardless of Bell's exemplary  behavior, copious self-help, and unquestionable

7    rehabilitation (PH 115:27-116:2); an intention she is free to pursue, but her position

8    is contrary to BPH's legal obligations.  See Argument XII.

9    To whatever extent BPH relied upon the opposition of the prosecutor and victim

10   in denying parole, such reliance violated due process and is unrelated to Bell's

11   current dangerousness.

12   *C.  Bell's "Lack of Remorse"*

13   The panel next criticized Bell's "present attitude toward the crime and no

14   apparent signs of remorse."  PH 120:1-4.  While Bell's attitude is a relevant

15   consideration for current dangerousness (15 CCR §2402(b)),  BPH engaged in

16   *wholesale speculation* where, although he expressed willingness to discuss his

17   feelings and insights (PH 16:25-27; Exhibit C 3:13-14), *BPH asked no questions*

18   *about this*.[17] PH 41:1-4.  See Argument VII.

---

[17]  BPH stated it would question Bell on issues "which we think require further
discussion."  PH 6:16-19.  To not ask questions on a topic BPH later said "bears on
[Bell's] unsuitability for parole" (PH 119:26-120:4) and then to speculate on what
he might have said if asked, violates due process as "otherwise arbitrary" under

1  BPH's criticism of Bell's supposed lack of remorse (PH 127:1-4) is not only

2  arbitrary, but contrary to the record. Immediately following the victim's injury, Bell

3  attempted to relieve his wife's suffering and sought medical aid, clear signs of

4  remorse under 15 CCR §2402(d)(3). Contrast *Martin*, 932 F.Supp.2d at 1046 [not

5  seeking aid for victim demonstrates lack of remorse]. Bell has repeatedly expressed

6  remorse in the trial court (Exhibit G 21:26-27, 22:16-18), in every appearance before

7  BPH (e.g., PH 103:26-104:6, 107:19-108:5; Exhibits C 27:3-8, G 23:19-24), with

8  friends and family (Exhibit O), and with Dr. Macomber, who found "[h]is feelings of

9  remorse appear to be sincere and genuine" (Exhibit H p.5). See Argument IX.C.

10  To whatever extent BPH relied upon Bell's "present attitude toward the crime"

11  and "lack of remorse" in its determination of unsuitability, such reliance violated due

12  process as arbitrary, contrary to the record, and irrelevant to current dangerousness.

13  *D. Bell's Closing Statement*

14  BPH's final piece of "other information" indicating unsuitability criticized Bell's

15  closing statement:

16      "Your closing statement, although detailed and lengthy,
17      detailed the effect on you, not your victim. In fact, mention
18      of your victim was cursory at best." PH 120:4-7

19  This criticism is both arbitrary and fundamentally unfair where Bell *did exactly*

20  *what BPH told him to do*:

_____

*Hill.*

1
2

*"Please focus your closing statement as to why you feel
you are suitable for parole."* PH 7:8-10.

3      In his closing statement (PH 102:2-108:23), Bell admitted the flawed thinking and

4   bad choices which led him to prison, taking full responsibility for his actions without any

5   excuses or justification.  PH 102:6-104:6.  He highlighted his changed thinking and

6   behavior, which reduce his risk to society.  PH 104:6-107:18, 108:5-21.  And contrary

7   to BPH's criticism, Bell spoke about his victim at least six times during his closing,

8   acknowledging the harm he caused, expressing remorse, and asking forgiveness.

9      To whatever extent BPH relied upon Bell's closing statement in its determination

10   of unsuitability, such reliance violated due process as arbitrary and irrelevant to

11   current dangerousness.

12

13
14
15

## VII.  BPH ILLEGALLY DENIED PAROLE BASED ON BELL'S DECLINING TO DISCUSS THE FACTS OF THE  COMMITMENT OFFENSE (15 CCR §2236)

16      California law provides that BPH "shall not require, when setting parole dates,

17   an admission of guilt to any crime for which an inmate was committed."  PC

18   §5011(b).  "A prisoner may refuse to discuss the facts of the crime...and *the refusal*

19   *shall not be held against the prisoner*."  15 CCR §2236 (emph.added); see *In re*

20   *Caswell*, 92 Cal.App.4th 1017, 1033, 112 Cal.Rptr.2d 462, 474(Cal.App. 1 Dist.

21   2001).

22      On the advice of counsel, Bell stipulated to the record and accepted full

1  responsibility for the commitment offense, but otherwise exercised his right not to

2  discuss the facts of the crime. PH 16:16-19; Exhibit C 3:9-12. BPH could not

3  legally hold this against Bell - - *but that's <u>exactly</u> what happened.*[18]

4      Regulations provide discussing the "facts of the crime" with the prisoner for one

5  purpose <u>only</u>: "*to assist in determining the extent of personal culpability.*" 15 CCR

6  §2236. Where Bell accepted full responsibility, culpability is established and

7  further discussion of the facts of the crime is <u>irrelevant</u> to his suitability for parole.

8  Indeed, "culpability" is not mentioned in <u>any</u> of the codified suitability circumstances

9  under 15 §CCR 2402, while insight and remorse are crucial to these factors, as BPH

10  told Bell in 2004. Exhibit J 9:11-12.

11      Bell indicated his willingness to discuss his feelings and insights about his

12  actions, the positive changes he has made in his life, and his remorse. PH 16:25-27;

13  Exhibit C 3:13-14. However, BPH illegally prohibited all such discussion *unless*

14  *Bell waived his §2236 right not to discuss the facts of the crime:*

15              "If he wants to talk about how he feels about the offense
16              without going into the offense itself, that would be
17              [un]acceptable,[19] and we'll certainly try to guard against that.

---

[18] Dr. Schroeder likewise illegally punished Bell for exercising this right. See
Argument VIII.D.

[19] Note that the hearing transcript is incorrect: the Commissioner said
"unacceptable" not "acceptable." By order Dated 9/24/07, the Kings County
Superior Court found that "the term 'acceptable' has been switched for the more
context-correct term 'unacceptable'" in the hearing transcript, and that "the error is
clear from a review of the sentence and the discussion both following and preceding

1
2
3
4
5

> Certainly, should Mr. Bell cross the bridge and begin talking
> about any part of the commitment offense vis-a-vis his
> remorse and feelings, that would open that door. And Ms.
> Buchalter will be very mindful that he doesn't do that."
> PH 17:19-27

6   It should be noted that this prohibition resulted from a procedural due process

7   violation, i.e., BPH accepting legal advice from the prosecutor (PH 17:3-15) in

8   violation of 15 CCR §2030(d)(2) "Role of the Prosecutor" which *specifically bans*

9   *such advice.*

10      Bell's feelings and insights are not "facts of the crime." It was clearly arbitrary

11  to prohibit all exploration of the former unless he discussed the latter. And prejudice

12  was manifest where *BPH held Bell's silence against him* in its decision to deny

13  parole, finding his "present attitude toward the crime and no apparent signs of

14  remorse" contributed to his unsuitability. *BPH itself allowed no discussion* and

15  *asked no questions*[20] *about this due to its own illegal prohibition - - a classic*

16  *Catch-22!* (PH 119:26-120:4)

17      **BPH cannot have it both ways**. If, *arguendo*, a prisoner's insights and feelings

18  are so intertwined with the "facts of the crime" that these *cannot be discussed*

---

the same." Exhibit V p.4. Bell presented this to the California Supreme Court on
10/5/07, during the pendency of his habeas petition in that court. Exhibit U.

[20] This is especially prejudicial given BPH's previous statements that Bell's insights
were of "greatest concern." Exhibit J 9:11-12. The panel assured Bell that it would
question him on topics "which [BPH] think[s] require further discussion" (PH 6:16-
19), *but asked no questions* about his insights and remorse (PH 51:1-4) before
finding that his supposed "lack" contributed to unsuitability. PH 119:26-120:4.

1    *separately*, then the legal right to silence established under 15 CCR §2236 <u>must</u>

2    <u>apply equally</u> to facts, insights, and feelings; denying Bell parole for *obeying* BPH's

3    prohibition violated due process. If, on the other hand, insights and feelings <u>*can be*</u>

4    *discussed separately* from facts[21], then the panel's prohibition violated due process

5    by arbitrarily refusing to hear and consider this evidence.

6        Either way, the panel's actions here were arbitrary and prejudicial. Reversal is

7    required.

8

## VIII. BPH'S DECISION IN BELL'S CASE VIOLATES DUE PROCESS WHERE BASED ON EVIDENCE KNOWN TO HAVE <u>NO</u> "INDICIA OF RELIABILITY"

9
10
11

12       All evidence underlying BPH's decision must possess "some indicia of

13   reliability." *Biggs*, 334 F.3d at 915. But here, despite clear evidence of its

14   inaccuracy and unreliability *about which BPH was aware*, the panel explicitly relied

15   upon the Schroeder psychological report (Exhibit F); specifically, page 4 of that

16   report. PH 119:9-14. Although Schroeder's overall conclusion was that Bell is <u>low</u>

17   <u>risk</u> - - the <u>only</u> purpose for this report - - BPH inaccurately held it was "not totally

18   supportive" of parole. PH 119:9. See *Barker*, 151 Cal.App.4th at 375-76, 59

---

[21] The regulations clearly anticipate that these are separate considerations, where facts address <u>culpability</u> under 15 CCR §2236 while feelings, insights, and remorse address <u>suitability</u> under 15 CCR §2402(d). "Culpability is not mentioned as a suitability factor, nor can it be under PC§5011(b)." *In re Dannenberg*, 102 Cal.App.4th 95, ___, 125 Cal.Rptr.2d 458, 472-73 (Cal.App. 1 Dist. 2002), reversed on other grounds by *Dannenberg*.

1  Cal.Rptr.3d at 768 [BPH finding of "not totally supportive" report is "inaccurate

2  [when] overall conclusion...was in the low range"].  See Argument VI.A.

3  ### A.  Schroeder Report Deficiencies

4     Dr. Schroeder interviewed Bell for approximately 35 minutes on November 11,

5  2005.  She conducted no standardized tests[22] and was so superficial  that Bell

6  expressed concern to both his attorney and his CDCR counselor at that time.

7     Bell stipulated to the official record and accepted full responsibility for the

8  commitment offense but otherwise declined to discuss with Schroeder the "facts of

9  the crime."[23]  Exhibit F p. 3.  He expressed his willingness to discuss his insights and

10  remorse, but Schroeder asked no questions about these.[24]  She likewise asked no

11  questions about Bell's copious self-help activities, except Narcotics Anonymous.

---

[22] All other psychological evaluations have included *multiple, objective, standardized psychological tests* to determine Bell's risk of future violence; *Bell scored "low" in every one.* Exhibits D, E pp. 7-8, G p.3, H pp. 3-4, P 4:1-6.

[23] Because no therapist-patient confidentially existed here, the protections afforded prisoners to "refuse to discuss the facts of the crime" (15 CCR §2236) must apply to BPH psychological evaluations.  Further, as Bell was not free to refuse to undergo this evaluation, forcing him to answer implicates his Constitutional privilege against self-incrimination.  See *Estelle v. Smith*, 451 U.S. 454, 468-9, 101 S.Ct. 1866, 1876 (1981).  BPH's instruction to  "cooperate with clinicians" in future psychological evaluations (PH 121:6-8) violates due process and Bell asks this Court to hold it invalid.

[24] Regulations governing psychological evaluations require discussion of "causative factors, self-understanding, attitudes, motivation for change, emotional stability, social identification, sincerity, and rehabilitation" (D.O.M. §62090.13.2) all of which could have been addressed without discussing the "*facts of the crime*."

1   Exhibit F. p. 2.

2       The *single paragraph* on page 4 of the Schroeder report, the only portion relied

3   upon by BPH, *is unreliable in its entirety* because it fails to provide *any supporting*

4   *facts* or reasons as required by the applicable regulations[25] and by prevailing

5   professional standards. Exhibit P 2:3-5, 4:7-20; PH 90:5-6, 91:11-20. Where the

6   factual assertions and resulting conclusions on page 4 are <u>completely unsupported</u>,

7   the report has no "indicia of reliability."

8       Specific unsupported and incorrect assertions from page 4 of the Schroeder

9   report are detailed in Exhibit G, and include:

10      (1)   "Anger management programs would be beneficial." <u>No fact</u> or reason is

11   cited in support of this recommendation, and <u>no evidence</u> in Bell's record indicates

12   he has any problem controlling his anger. It is extremely unlikely Bell could have

13   remained disciplinary free for over a decade (at the time of Schroeder's report) in the

14   "caldron of prison life" if he had an anger problem. Exhibits H p.7; P 3:9-10. This

15   statement ignores Bell's completion of three anger management programs prior to the

16   Schroeder interview (four prior to the hearing). PH 87:6-10; Exhibits C 7:9-15; E

17   p.3; H pp.2-3, 5; L p.5; P 3:11-14. BPH noted Bell's completion of anger

18   management programs (PH 39:22-23, 41:9-10) so *BPH <u>knew</u> this was unsupported.*

---

[25] Psychological reports must "delineate the psychopathy present which supports the
diagnosis." D.O.M. §54060.43.1. "All evaluations shall list the reasons for the
general conclusions." D.O.M. §54060.43.2. "Be sure to note the reasons wherever
possible." D.O.M. §62090.12.2.

1    (2)    "Mr. Bell has not come to terms with his crime." No fact or reason is cited

2    in support of this assertion, and no evidence in Bell's record indicates this. Since the

3    Schroeder report itself notes that Bell did not discuss the offense with her, there is no

4    basis for this arbitrary assertion. Exhibit F p.3. BPH noted that Bell had not

5    discussed the offense with Schroeder (PH 48:10-13, 65:24-66:7) so *BPH knew this*

6    *was unsupported.*

7    (3)    "He has not expressed remorse." No fact or reason is cited in support of

8    this assertion, which is contrary to the record. Bell demonstrated remorse by helping

9    the victim and obtaining medical assistance; he expressed remorse in the trial court;

10   he expressed remorse at all parole hearings; he expressed remorse to others who

11   wrote support letters on his behalf. See Argument IX.C. Since the Schroeder report

12   itself notes that Bell did not discuss the offense (Exhibit F p.3), there is no basis for

13   this arbitrary assertion. BPH itself noted that Bell had not discussed the offense with

14   Schroeder (PH 48:10-13, 65:24-66:7) so *BPH knew this was unsupported.*

15   (4)    "Mr. Bell must to (*sic*) come to terms with his crime in order to move

16   toward resolution." Repetitive of (2) and (3) above, and completely contrary to the

17   Schroeder report's overall conclusion that Bell is a "below average" risk to society.

18   Exhibit F p.3; PH 91:11-20.

19   (5)    "He needs to look in the mirror instead of out the window. He has much

20   //

1    work to do."[26]  No fact or reason is cited in support of this assertion, which is

2    contrary to the record.  Bell has done everything except "look out the window" since

3    coming to prison, including copious self-help activities throughout his term (i.e.,

4    "looking in the mirror") which the Schroeder report ignores.  PH 80:5-85:23;

5    Exhibits C 6:9-8:1; H pp. 2-3; P 2:3-15.  BPH itself noted Bell's completion of

6    "numerous self-help programs" (PH 41:6, 119:2-3) so *BPH knew this was*

7    *unsupported.*

8        In short, where the above assertions are unsupported by and/or  contrary to the

9    record, where the report cites no fact, reason, or diagnosis  as required by the

10    regulations, and where BPH knew the assertions had no "indicia of reliability."

11    BPH's explicit reliance here to deny parole (PH 119:9-14) violates due process.

12    *B.  Information Not Before The Panel*

13        Bell repeatedly attempted to correct the above factual errors prior to the instant

14    parole hearing, especially regarding self-help and remorse.  Exhibit G pp. 15-19.

15    Neither Schroeder nor CDCR replied.  Bell's correctional counselor requested that

16    Schroeder  correct this report, to no avail.  Exhibit G p.6.  Bell filed a CDC-602

17    administrative appeal (Exhibit G p.5) which was denied at all levels within CDCR.

18    Exhibits G p. 7; M.

---

[26]  This mirrors the BPH finding in *DeLuna*, i.e., "You have been wasting your
time...[and] need some more insight into the life offense," which the court held
insufficient to disturb the overall "low risk" assessment or to deny parole. *DeLuna*,
126 Cal.App.4th at 596-97, 24 Cal.Rptr.3d at 651-52.

1        Bell next prepared a Statement of Disagreement and submitted it to his

2  correctional counselor on October 18, 2006, well in advance of his hearing.  Exhibit

3  G.  But this Statement was not before BPH, and thus was not considered in its

4  decision; BPH knew only that a CDC-602 appeal was pending.  PH 50:16-18, 59:14-

5  15.  Where relevant information bearing on Bell's suitability was properly submitted

6  but not before the panel, a rehearing is the appropriate remedy.  15 CCR §2042.

7  BPH ignored Bell's request for a rehearing.  Exhibit N.

8  *C.  Peer Review Of Schroeder Report*

9        In his frustration at CDCR's refusal to correct the inaccurate and unsupported

10  Schroeder report, Bell at his own expense retained Dr. Melvin Macomber to conduct

11  an independent psychological evaluation and review of the record.  Exhibit H.  Dr.

12  Macomber spent more than four hours interviewing Bell and administered three

13  objective standardized tests, all of which found Bell to be "low risk, low needs... [I]f

14  100 men were released on parole, he would do better than 99 of them."  Exhibit H

15  p.4.  More importantly for the issue at hand, Dr. Macomber reviewed the Schroeder

16  report and found page 4 to be "***unsubstantiated and not appropriate to the facts.***"

17  Exhibit H p.5.[27]

18        Another psychologist, Dr. Terry Chase, conducted a thorough peer review of the

[27] The panel recognized Dr. Macomber's extensive experience and expertise.  PH
46:13-21; see Exhibit H pp. 8-9, 10; also *Weider*, 145 Cal.App.4th at 580, 52
Cal.Rptr.3d at 154.  However, there is no evidence that the panel considered his
peer review of the Schroeder report.

1  Schroeder report. Exhibit 9; PH 37:12-27. Dr. Chase's sworn declaration of his

2  findings include:

3      "[O]ne of the least professional I've ever seen, providing *no*
4      *clinical or logical support* for its poorly conceived conclusion."
5      Exhibit P 2:3-5 (emph.added)

6      "Dr. Schroeder's report is *neither accurate nor reliable*. Reliance
7      upon such a *subjective, unsupported, inconsistent, and*
8      *unprofessional* report...cannot be justified."   Exhibit P 4:15-18
9      (emp.added)

10  Incredibly, and over the objection of Bell's attorney (PH 37:1-27), the panel

11  *arbitrarily refused to consider* Dr. Chase's declaration in violation of 15 CCR

12  §2402(b). PH 36:24-26. BPH's refusal was based upon neither relevancy or

13  reliability, the only valid evidentiary considerations under §2402(b), but because they

14  could not "cross-examine" Dr. Chase. *Ibid.* This is clearly arbitrary where the panel

15  *accepted all other documents* without "cross-examining" the authors (e.g.,

16  Schroeder report, Macomber report, community support letters, etc.). This refusal

17  contradicts the panel's self-serving statement they "reviewed all information

18  received from the public." (PH 118:12-13)

19  ### D.  *No Discussion Of Commitment Offense*

20  As noted *supra*, Bell has a legal right under 15 CCR §2236 not to discuss with

21  BPH the facts of the offense. See Argument VII. This right necessarily extends to

22  every phase of the parole process, including the correctional counselor's report

23  (Exhibit L p. 2) and the psychological evaluation (Exhibit F p. 3), as BPH explicitly

1  recognized.  PH 65:24-66:4.

2  However, when Bell exercised this right with Dr. Schroeder, she abruptly

3  terminated the interview, then sought to punish Bell through the unsupported

4  negative assertions on page 4 of her report noted above.  Both reviewing

5  psychologists suggest that Schroeder was retaliating against Bell:

6  "Because   Mr.   Bell   did   not   discuss   the   commitment
7  offense...[Schroeder] noted that he was not remorseful [and] that he
8  had much work to do...This comment was unsubstantiated and not
9  appropriate to the facts." (Dr. Macomber)  Exhibit H p. 5.
10
11  "I can only conclude from this report that Dr. Schroeder...was
12  deliberately denigrating Mr. Bell to further some personal agenda
13  (e.g., possibly punishing him for exercising his legal right not to
14  discuss the facts of his crime)." (Dr. Chase) Exhibit P 4:9-12.

15  As further evidence of Schroeder's attempt to punish him for exercising his

16  §2236 right, Bell submits (with permission of the subject, inmate David Twinn)

17  another BPH psychological report prepared by Schroeder less than four months prior

18  to Bell's.  Exhibit Q.  These two reports are comparable in virtually every respect

19  *except one*: Bell declined to discuss the facts of his crime (Exhibit F p.3) while

20  Twinn was "forthcoming regarding his crime."  Exhibit Q p.4.  As a result,

21  Schroeder arbitrarily and capriciously punished Bell (i.e., "He has much work to do."

22  Exhibit F p.4) while rewarding Twinn (i.e., "He is ready to go home."  Exhibit Q

23  p.4).

24  Leaving aside superficial descriptive differences (e.g., race, age, etc.) and the

1    unique facts of each commitment offense (though both were situational), Bell and

2    Twinn present remarkably similar factors:

3          • Stable childhoods without "red flag" behaviors, normal
4             development and socialization, no mental health treatment, no
5             substance abuse, and minimal (Twinn) or no (Bell) juvenile
6             records;

7          • Positive incarcerated behaviors, minimal (Twinn) and no (Bell)
8             disciplinary history, three vocational completions apiece[28],
9             exceptional work evaluations, laudatory chronos, and copious
10            self-help[29]; and,

11         • Realistic parole plans, strong family support, employment offers,
12            and residences. Exhibits F pp. 1-3, Q pp. 1-3.

13    Even more significant is how Schroeder psychologically assessed these two men:

14         • <u>Identical</u> positive mental status, "clear in all areas of the exam."
15            Exhibits F p.3, Q p.3;

16         • <u>Identical</u> DSM-IV diagnoses (i.e., "none") on all Axes. *Ibid.*;

17         • <u>Identical</u> Global Assessment of Functioning (GAF) scores of 85.
18            *Ibid*; and,

19         • **<u>Identical overall conclusions</u>, i.e., "risk of harm to others is**
20            **below average for [the] parolee population."** Exhibits F p.3,
21            Q p.4.

---

[28] Schroeder praised Twinn for "overachiev[ing] in vocational programs compared to other inmates" (Exhibit Q p. 4) but is silent on Bell's <u>identical</u> achievement.

[29] A review of their respective C-files reveals that both Bell and Twinn have completed every in-prison self-help program available and sought additional outside programs. But while Schroeder praises Twinn for "do[ing] as much as possible to better himself" (Exhibit Q p. 4) she opines that Bell "needs to look in the mirror instead of out the window." Exhibit F p.4.

1     The _only meaningful difference_ here is that Twinn discussed the facts of his crime

2     while Bell declined, for which Schroeder illegally punished Bell in violation of 15 CCR

3     §2236.

4     Where page 4 of Schroeder's report is (1) unsupported and contrary to the

5     record, (2) fails to follow regulatory and professional requirements, (3) has been

6     found inaccurate in two peer reviews, and (4) illegally punishes Bell for not

7     discussing the facts of the crime, it has no "indicia of reliability." BPH's reliance

8     upon this while ignoring the overall "low risk" conclusion violates due process.

9     Reversal is required.

10

11        **IX.  BPH IGNORED OR UNREASONABLY NEGATED**
12        **CODIFIED CIRCUMSTANCES TENDING TO SHOW**
13        **SUITABILITY FOR PAROLE (15 CCR §2402(d))**

14    The Ninth Circuit has cautioned BPH against giving "little or no weight" to

15    evidence of suitability for parole. _Irons_, 505 F.3d at 854.  "[T]he gravity of the

16    commitment offense or offenses alone _may_ be a sufficient basis for denying a parole

17    application, _so long as the Board does not fail to consider all other relevant_

18    _factors_." _Scott_, 119 Cal.App.4th at 891, 15 Cal.Rptr.3d at 45 (emph.added).  Even

19    if, _arguendo_, a decision is supported by "some evidence" (not the case here), it may

20    nonetheless abrogate due process if it did not consider _all favorable factors_.  _In re_

21    _Capistran_, 107 Cal.App.4th 1299, 1306, 123 Cal.Rptr.2d 872, 877 (Cal.App. 2 Dist.

22    2003).

1    In Bell's case, BPH ignored or denigrated *overwhelming undisputed evidence*

2    supporting <u>every</u> codified suitability circumstance under 15 CCR §2402(d).[30]

3    Exhibit C 16:22-18:4.  BPH mentioned <u>only two</u> of those nine circumstances,

4    arbitrarily ignoring all others - - *even those suitability factors found by the 2004*

5    *panel!*  See *Rosenkrantz*, 444 F.Supp.2d at 1082-83 [shifting characterizations of

6    unchanging factors indicate arbitrariness].  BPH gave <u>no</u> reasons why or how the

7    commitment offense outweighed these positive factors, further demonstrating mere

8    *pro forma* consideration.

9    ### A.   No Juvenile Record

10   "*The prisoner does not have a record of assaulting others as a juvenile or*

11   *committing crimes with a potential of personal harm to victims*." 15 CCR

12   §2402(d)(1). The commitment offense represents Bell's <u>only</u> arrest or conviction.

13   Exhibit L p.2.  Though cited in 2004 (Exhibit J 2:17) and mentioned early in the

14   instant hearing (PH 20:13-17) this suitability factor was <u>completely ignored</u> in BPH's

15   decision (PH 118:12-120:6), violating due process. *Weider*, 145 Cal.App.4th at 590,

16   52 Cal.Rptr.3d at 161.

17   ### B.   Stable Social History

18   "*The prisoner has experienced reasonably stable relationships with others*."  15

19   CCR §2402(d)(2). The record clearly shows Bell's history of stable, positive

---

[30] Except Battered Woman Syndrome.

1 relationships, as found by the 2004 panel. Exhibit C 11:6-1; J 2:20-3:2; L p. 3; O.

2 The 2006 panel completely ignored this factor.

3 ### C.  Signs Of Remorse

4 "*The prisoner performed acts which tend to indicate the presence of remorse,*

5 *such as attempting to repair the damage, seeking help for or relieving suffering of*

6 *the victim, or indicating that he understands the nature and magnitude of the*

7 *offense.*" 15 CCR §2402(d)(3). This circumstance, clearly supported by the

8 evidence, was explicitly negated by BPH. PH 120:1-4. The record shows that Bell

9 immediately sought to "*relieve [the] suffering of the victim*" by helping her to stand,

10 assisting her to the shower, putting her in bed, and attempting to provide first aid.

11 RT 732-33, 1159-60, 1167-70. He then "*[sought] help for...the victim*" by calling

12 911 for medical assistance. RT 549, 1171-72; Exhibit L p.1[31]; PH 18:27.

13 These actions alone, without any further expressions of remorse, meet the

14 requirements of 15 CCR §2402(d)(3); *Martin*, 432 F.Supp.2d at 1046. The criteria

15 here is either "seeking help" or "indicating...understand[ing]" - - *both are not*

16 *required*. But, in fact, Bell has repeatedly expressed his understanding and profound

17 remorse.

---

[31] While the Life Prisoner Evaluation Report noted Bell calling 911 for medical
assistance (Exhibit L p. 1), the report fails to include  the corresponding Mitigating
Circumstance under 15 CCR §2405(a)(4): "*The prisoner tried to help the victim or
sought aid after the commission of the crime.*"  Bell requests this Court order
CDCR to correct this in future reports.

1    In the trial court, Bell expressed "sincere regret" for his actions and "remorse for

2    the pain" he caused.  Sentencing RT 16:26-7, 19:17-8 (see Exhibit G pp. 2, 21:26-

3    27, 22:16-18).  At his previous hearing, Bell spoke of "sadness and remorse," noting

4    he "pray[s] for [the victim] every day, hoping that she has found healing and peace."

5    Exhibit G 23:22-25.  Dr. Macomber found that Bell "accepts full responsibility" and

6    his "remorse appear[s] to be sincere and genuine."  Exhibit H p. 5.  Bell also has

7    expressed remorse to his family and friends.  Exhibit O.

8    Despite BPH's illegal prohibition against discussing remorse (see Argument

9    VII), in his closing statement Bell again took responsibility, and expressed remorse:

10    "There can be no excuse, no justification [for the crime], and I offer
11    none."  PH 102:6-7.
12
13    "I can't even imagine the agony I put Cathy and her family through.
14    There is no way I'd ever cause such harm again." PH 103:17-18.
15
16    "I pray for [her] forgiveness, even though I know I'm not entitled
17    to it." PH 104:4-6.
18
19    "I've hurt her too deeply to ever again win her trust...Whenever I
20    think of Cathy, it is with profound sadness and genuine remorse for
21    the agony I have caused her.  I pray that she has found healing,
22    peace, and happiness in her life." PH 107:27-108:5.

23    Even had Bell never previously indicated remorse, his closing statement amply

24    meets the requirements of 15 CCR §2402(d)(3).  "So long as [petitioner] accepts

25    responsibility, it does not matter how longstanding or recent it is." *Lee*, 143

26    Cal.App.4th at 1414, 49 Cal.Rptr.3d at 941.  Further, even this factor "must relate to

1    a defendant's continued risk to public safety." *Ibid.* BPH cites no evidence even

2    remotely questioning Bell's sincerity nor suggesting how this points to current

3    dangerousness.

4    **D.    *Motivation For Crime***

5        "*The prisoner committed his crime as the result of significant stress in his life,*

6    *especially if the stress has built over a long period of time.*" 15 CCR §2402(d)(4).

7    This circumstance, which is clearly supported by the evidence, was <u>completely</u>

8    <u>ignored</u> by the panel in determining suitability.   As characterized by the prosecution

9    at trial, the commitment offense resulted from *significant stress* in Bell's life due to

10    an emotional love triangle which *built over a period of months*:

11            "The pressure cooker is on the stove.  And its cooking...there was
12            a whole lot going on between June, July, and August.  Things
13            started to compress...It got more intense.   The pressure
14            increased...things began to compress, become tense. And motivated
15            the defendant [Bell] to do what he did...The tension began to
16            increase several fold."[32]  Exhibit R 3:20-4L1, 4:20, 5:18-19.

17        The trial court likewise found that the commitment offense resulted from a

18    *unique situation* in Bell's life.  Exhibit I 1:16-20, 2:6, 2:16-19.  The  Life Prisoner

19    Evaluation Report documented "[t]he crime was committed during or due to an

---

[32] The prosecutor's shifting characterizations of Bell's motivation demonstrates
arbitrariness. At trial, not only was Bell's life described as a "pressure cooker" but
his motivations were "strong [and] compelling."  Exhibit R 1:26-27.  However, at
the parole hearing the prosecutor argued that there was "no adequate explanation"
for the offense (PH 70:25-27) and thus Bell is "unpredictable" (PH 72:5-8, 74:17).
See Arguments VII, X.

1   unusual situation [un]likely[33] to reoccur."   Exhibit L p. 2.  BPH <u>ignored</u> this factor,

2   violating due process.

3   **E.   *Battered Woman Syndrome***

4       Does not apply.

5   **F.   *Lack Of Criminal History***

6       "*The prisoner lacks any significant history of violent crime.*"  15 CCR

7   §2402(d)(6).  As noted *supra*, Bell has <u>no</u> history of arrests or convictions other than

8   the commitment offense.  Though cited in 2004 (Exhibit J 2:17) and mentioned early

9   in the instant hearing (PH 20:13-17), BPH <u>ignored</u> it as a suitability factor in its 2006

10  decision  (PH 118:12-120:6), violating due process.  *Weider*, 145 Cal.App.4th at

11  590, 52 Cal.Rptr.3d at 161.

12  **G.  *Age***

13      "*The prisoner's present age reduces the probability of recidivism.*"  15 CCR

14  §2402(d)(7).  Bell's age, 51 at the hearing, reduces the probability of recidivism, as

15  documented by the U.S. Department of Justice actuarial study submitted to BPH

16  (Exhibit C 13:10-13, fn.12), and by Dr. Macomber's psychological evaluation.

17  Exhibit H pp.7-8.  BPH <u>completely ignored</u> this circumstance, violating due process.

18  //

---

[33] Due to a clerical error, this reads "*as* likely" instead of "*un*likely"; see correct
language at 15 CCR §2405(a)(6).  Bell's counsel attempted to correct this (PH 13:8-
10) but BPH refused (PH 25:24-26:3).

1    ### H.   Understanding And Plans For Future

2        "*The prisoner has made realistic plans for release or has developed marketable*

3    *skills that can be put to use upon release.*"  15 CCR §2402(d)(8).  This is the first of

4    only two suitability factors acknowledged by BPH.  PH 119:1-2, 119:16-21.

5    ### I.   Institutional Behavior

6        "*Institutional activities indicate an enhanced ability to function within the law*

7    *upon release.*"  15 CCR §2402(d)(9).  This is the second of only two suitability

8    factors acknowledged by BPH  (PH 118:25-119:6) and the only one consistent with

9    its 2004 findings.  Exhibit J 3:3-4.

10       It is clear from the above that BPH arbitrarily to ignored *overwhelming*

11   *undisputed evidence* of Bell's suitability for parole.  BPH's "failure to undertake the

12   individualized consideration of all relevant factors...also offends the Board's own

13   regulations, which require that '*all* relevant, reliable information available to the

14   panel *shall be considered* in determining suitability for parole'."  *Scott*, 119

15   Cal.App.4th at 898, 15 Cal.Rptr.3d at 51.  Reversal is required.

16

17   ### X. MAXIMUM TWO-YEAR DENIAL VIOLATES DUE PROCESS
18   ### WHERE (1) SOLELY BASED ON FACTORS IDENTICAL TO
19   ### "UNSUITABILITY" DETERMINATION AND
20   ### (2) DEMONSTRABLY ARBITRARY

21       Following a prisoner's initial parole consideration, hearings are to be held

22   annually unless BPH finds *exceptional factors* warranting a multi-year denial.  PC

1  §3041.5.  These exceptional factors must be stated on the record and *may not be*

2  *identical* to the factors relied upon to find a prisoner "unsuitable" for parole.  *In re*

3  *Jackson*, 39 Cal.3d 464, 473-9, 216 Cal.Rptr. 760, 769-70 (Cal.1985) ["*Jackson*"].

4  By placing these substantive limitations on BPH's discretion, California created a

5  liberty interest with due process protection which is cognizable on federal habeas

6  review.  *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 460, 109

7  S.Ct. 1904 (1989).

8      In Bell's case, the two factors cited by BPH in support of its maximum two-year

9  denial (PH 120:7-121:5) are *exactly the same* as those used to find him "unsuitable"

10  for parole in the first place[34] i.e., the commitment offense was "especially cruel" (PH

11  118:17-18, 120:13-25) and the flawed Schroeder report was "not totally supportive"

12  (PH 119:10, 120:25-121:5).  The *Jackson* court specifically rejected this approach

13  because, as here, there "is no indication that the two questions were considered

14  separately."  *Jackson*, 39 Cal.3d at 479, Cal.Rptr. at 770.

15      Use of the commitment offense is also *demonstrably arbitrary* where, as it did

16  previously (see Argument IV), BPH employed "shifting characterizations" of the

17  unchanging commitment offense, citing "different parts of the regulations to describe

18  petitioners crime."  *Rosenkrantz*, 444 F.Supp.2d at 1082-83.

---

[34] Of course, BPH had no basis for denying Bell parole at all.  See Arguments II, III, IV.

|   | Subfactors | "Unsuitability" | Multi-Year Denial |
|---|---|---|---|
| 1 | | | |
| 2 | (A) Multiple Victims | N/A | N/A |
| 3 | (B) Dispassionate and Calculated | PH 118:18-19 | N/A |
| 4 | (C) Victim Abused | N/A | N/A |
| 5<br>6 | (D) Exceptionally Callous Disregard<br>For Human Suffering | PH 118:19-20 | PH 120:21-23 |
| 7 | (E) Motive Was Inexplicable/Trivial | N/A | PH 120:23-25 |

8    The facts of Bell's offense did not change between the finding of unsuitability

9   and the "separate decision" (*sic*) to deny parole for two years. How could the crime

10   be "dispassionate and calculated" one minute and not the next? If the motive was

11   not "inexplicable or trivial" enough to deny parole in the first place, how can this

12   later justify an *exceptionally* long denial? The panel's shifting characterizations of

13   the commitment offense within the same hearing demonstrate that BPH acted

14   arbitrarily, violating due process.

15   Further, neither of the two subfactors of the commitment offense cited here is

16   supported by any evidence. The first of these, "callous disregard to (*sic*) human

17   suffering" (PH 120:21-23) is fully addressed in Argument III.B. No evidence

18   supports this subfactor to deny parole at all, much less for the maximum two years.

19   The only other finding cited here is "the motive for the crime was inexplicable or

20   very trivial." PH 120:23-25. But nothing in the record demonstrates that Bell's

21   motive was "materially less significant (or more 'trivial') than those which

22   conventionally drive people to commit the offense in question, and therefore more

1    indicative of a risk of danger to society." *Scott*, 119 Cal.App.4th at 893, 15

2    Cal.Rptr.3d at 47.  Only a <u>truly</u> inexplicable motive having "no discernable

3    purpose," thus indicating a prisoner is "*<u>unusually</u> unpredictable and dangerous,*"

4    can be used to deny parole.  *Ibid*; *Rosenkrantz*, 444 F.Supp.2d at 1082.

5    Here the record <u>clearly</u> establishes that Bell's motive was ***neither inexplicable***

6    ***nor very trivial***.  As asserted by the state at trial, Bell's motives were "strong [and]

7    compelling" due to the "intense...pressure cooker" stress of an emotional love

8    triangle and his fear of imminent discovery.  Exhibit R; see Argument IX.D.  In

9    addition, this motive was cited by the trial judge (Exhibit I), the probation officer, the

10    prosecutor at the parole hearing (PH 68, 9), by the victim throughout the case, most

11    recently at the parole hearing (PH 113), and by Bell (PH 103-4).

12    The temptation to infidelity is readily understandable even to those who do not

13    succumb; it has been a staple of fiction and drama throughout human history.

14    Emotional stress from such three-party scenarios is a common and well-understood

15    motivation - - and is a factor <u>favoring</u> parole. *In re Lawrence*, 150 Cal.App.4th at

16    1511, 1560, 59 Cal.Rptr.3d 574 (Cal.App. 2 Dist. 2007) pending review on different

17    grounds.[35]  This is <u>not</u> a basis for an exceptional two-year denial.

18    As for the Schroeder report being "not totally supportive," this was fully

19    addressed in Arguments VI.A. and VIII.  Where Schroeder's overall conclusion was

---

[35] Whatever position Bell occupied in the love triangle is <u>irrelevant</u> to his current dangerousness. *Ibid*.

1    that Bell is "low risk," this cannot justify a parole denial at all, much less a maximum

2    two-year denial. *Barker*, 151 Cal.App.4th at 375-76, 59 Cal.Rptr.3d at 768.

3        Further, BPH cited <u>no evidence</u> suggesting Bell could not be found suitable for

4    parole in one year, as required by PC §3041.5; compare *In re Burns*, 136

5    Cal.App.4th 1318, 1325, 40 Cal.Rptr.3d 1, 4 (Cal.App. 3 Dist. 2006). BPH's

6    statement that the Schroeder report prescribed *"a longer period of observation and*

7    *evaluation, or treatment*"[36] (PH 120:26-121:21) <u>was created out of thin air</u>! **The**

8    **Schroeder report does <u>not</u> mention  "observation" <u>nor</u> "evaluation" <u>nor</u>**

9    **"treatment."** These are *extrinsic* actions undertaken by CDCR, not the suggested

10    *intrinsic* actions for Bell himself to undertake (e.g., "look in the mirror") - - which, *if*

11    *needed at all*, he could accomplish through continued self-help after release.

12        Even <u>if</u>, *arguendo*, the record supported BPH's concern that Bell needs

13    "treatment," <u>no evidence</u> implies that two years would be needed to satisfy that

14    concern.

15        BPH's two-year denial in Bell's case violates both procedural and substantive

16    due process. Reversal is required.

17

---

[36] The Schroeder report's Section XII "Current Mental Status/Treatment Needs" indicates <u>neither</u> a DSM-IV diagnosis <u>nor</u> any need for treatment or observation. Exhibit F p.3. "Treatment" is clearly inappropriate here - - indeed it's impossible within CDCR without a DSM-IV diagnosis. *DeLuna*, 126 Cal.App.4th at 596-7, 24 Cal.Rptr.3d at 651-2. Compare to similar unsupported "boilerplate" in *Barker*, 151 Cal.App.4th at 367, 59 Cal.Rptr.3d at 761.

1
2
3

## XI.  NO EVIDENCE SUPPORTS BPH'S FINDINGS THAT MORE SELF-HELP AND A NEW PSYCHOLOGICAL REPORT ARE NEEDED

4    At the end of its decision, the panel ordered "a new psychological evaluation"

5    before Bell's next hearing.  PH 121:8.  *No evidence supports this*.

6    Bell has been evaluated four times since his conviction, and *all four evaluations*

7    *conclude he is a low risk of danger to society*.  Exhibits D p.4; E p.8; F p.3; H p.8.

8    BPH cites no evidence questioning these conclusions - - the only valid basis for

9    ordering a new psychological evaluation.  None of these reports (not even the flawed

10   Schroeder report) suggests that a new psychological report is needed; Dr. Macomber

11   explicitly finds Bell "does not need further psychological evaluations."  Exhibit H

12   p.8.  As California courts have held, "[t]he Board's decision to ignore the experts

13   and announce a contrary finding, without any evidentiary support, was arbitrary and

14   capricious."  *DeLuna*, 126 Cal.App.4th at 596, 24 Cal.Rptr.3d at 652.

15   But even if, *arguendo*, "some evidence" supported BPH's order for a

16   psychological examination more current and extensive than Schroeder's, *such an*

17   *examination has already been conducted by Dr. Macomber*.  Exhibit H.  Dr.

18   Macomber's report is not only more current than the Schroeder report, but it is *more*

19   *comprehensive in every way*.  It includes three objective standardized tests where the

20   Schroeder report had none.  It includes a review of Bell's copious self-help efforts

21   where the Schroeder report ignores this.  It supports its conclusion with facts in

22   compliance with BPH regulations and professional standards which the Schroeder

1    report does not. It has already withstood a peer review which the Schroeder report

2    failed. Exhibit P.

3        Further, Bell "discussed at length the details of commitment offense" with Dr.

4    Macomber (Exhibit H p.5), which is exactly what the panel told Bell to do at his next

5    psychological evaluation.[37]   PH 121:6-7. Where *every conceivable objective* of a

6    new evaluation has been met, and where this new, more comprehensive evaluation

7    has already been found "*supportive of parole*" (PH 119:14-15) the panel's order

8    here is meaningless.

9        BPH's order to "continue self-help" *does not appear in the hearing transcripts*

10   *at all*, but only on the written decision forms. Exhibit B. Nothing in the panel's

11   decision (PH 118:3-12:14) specifies "the information considered and the reasons for"

12   this order as required by 15 CCR §2255. In fact, the order written on the form is

13   contrary to the transcript of the decision which praises Bell's participation in

14   "beneficial self-help programs." PH 119:2-3. Nothing in the transcript indicates the

15   panel's intent to impose a requirement for more self-help and thus Bell had no

16   opportunity for objection or clarification as is his right under 15 CCR §2245. BPH's

17   after-the-fact "self-help" order is invalid because it *violates procedural due process*.

18       In addition, *no reliable evidence supports this order*. Only page 4 of the

---

[37] BPH's instruction here to "cooperate with the clinician in the completion of a
clinical evaluation" violates due process where his only "non-cooperation" (*sic*) was
asserting his 15 CCR §2236 privilege not to discuss the facts of the crime.

1    Schroeder report suggests Bell needs more self-help, and this already has been

2    shown completely *arbitrary and contrary to the record*. See Argument VIII. <u>All</u>

3    reliable evidence contradicts the panel's order (Exhibit C 6:9-8:1), including all other

4    psychological evaluations. Exhibits E p.9 [self-help "should not be considered as

5    mandatory"]; H p.3 ["no need for...further self-help"].

6        Bell asks this Court to invalidate both of these arbitrary BPH orders.

7

## XII. BPH'S DECISION VIOLATES DUE PROCESS WHERE BASED ON AN ARBITRARY ACROSS-THE-BOARD POLICY TO DENY PAROLE AT ALL HEARINGS WHERE A VICTIM ATTENDS IN OPPOSITION

12        It is long established that an across-the-board policy of parole denials would

13    violate due process because it is arbitrary. *Dannenberg*, 34 Cal.4th at 1094, 23

14    Cal.Rptr.3d at 440. However, this is exactly what happened at Bell's hearing: BPH

15    denied parole under an unwritten across-the-board policy denying parole at <u>all</u>

16    hearings where a victim attends to oppose release.

17        As noted *supra*, BPH is required to consider a victim's opposition, but this

18    opposition is not a factor under 15 CCR §2402 upon which the Board may rely to

19    deny parole. *Hayward*. 512 F.3d at 545 fn.9; *Barker*, 151 Cal.App.4th at 375, 59

20    Cal.Rptr.3d at 767-68. See Argument VI.B. Yet in <u>every</u> hearing where a victim

21    attends in opposition, including Bell's, the panel *yields to the victim's wishes* by

22    denying parole. Although BPH may mouth conclusionary rationalizations based on

1  allowable unsuitability factors, as it did here, in truth the Board abdicates its

2  statutory responsibilities in favor of pandering to an aggrieved victim's outrage at the

3  prisoner's potential release. Whatever the victim's outrage, such pandering violates

4  due process. *In re Fain*, 139 Cal.App.3d 295, 305-7, 188 Cal.Rptr. 653, 660-61

5  (Cal.App. 1 Dist. 1983).

6     In Bell's case, the victim clearly expressed her opposition to his release

7  regardless of any rehabilitation efforts: "I don't really care how many classes he's

8  taken or how many meetings he's attended." PH 115:27-116:2. And she will always

9  oppose Bell's release: "That is what brings me here today and will bring me here

10  *every time he comes up for parole* so I can plead my cause against his release." PH

11  112:13-15 (emph.added). Relying on eternal victim outrage to deny parole would

12  convert Bell's sentence to life without parole in violation of due process. Further,

13  where the victim's opposition is based entirely on the commitment offense, reliance

14  upon such unchanging facts to repeatedly deny parole also violates due process.

15  *Rosenkrantz,* 444 F.Supp.2d at 1080.

16     It is an abuse of discretion and of due process for BPH to pander to victim

17  outrage by denying parole, thus shifting the responsibility for determining a

18  prisoner's suitability to the courts, as was done here - - as BPH does *every time* in

19  the face of victim opposition.

20     Bell requests that this Court order discovery and allow full investigation of this

21  illegal, unwritten, across-the-board BPH policy.

1

## CONCLUSION

2   In summary, BPH's parole denial here violated substantive due process because

3   it was not based on: (1) *some evidence*; (2) of the *statutory factors*; (3) that was

4   *reliable and relevant*; (4) to Bell's *current unreasonable threat to public safety*.

5   BPH violated procedural due process by: (5) unreasonably imposing the *maximum*

6   *two-year denial*; (6) illegally penalizing Bell for *declining to discuss the facts of his*

7   *crime;* (7) explicitly relying on evidence shown to have *no "indicia of reliability"*

8   while *excluding relevant and reliable information*; (8) ignoring codified

9   *circumstances of suitability;* and, (9) arbitrarily denying parole under an *illegal*

10  *policy* of placating attending victims.

11  WHEREFORE, for all the aforementioned reasons, Petitioner Bell prays that this

12  Court will issue a writ of habeas corpus granting the following relief:

13  1.   Vacate BPH's parole denial of November 7, 2006, and order BPH to

14        immediately conduct a new hearing in accordance with due process

15        safeguards or, in the alternative, order Bell's immediate release;

16  2.   Find that, after 14 years of exemplary behavior, Bell's commitment offense

17        does not constitute "some evidence" of current dangerousness, and that no

18        other reliable evidence indicates Bell currently poses an unreasonable risk

19        of danger to society;

20  3.   Hold that as a matter of law Bell may discuss feelings, insights, and remorse

21        without waiving his right not to discuss the facts of the crime;

*Bell v. Hartley* - Page 52

4.  Hold that as a matter of law Bell is not required to discuss the facts of the crime in a psychological evaluation and the refusal cannot be held against him;

5.  Find that Bell has expressed remorse within the meaning of 115 CCR §2402(d)(3);

6.  Order BPH to disregard page 4 of the Schroeder report as having <u>no</u> "indicia of reliability";

7.  Order BPH to consider the sworn deposition of Dr. Terry Chase;

8.  Hold that as a matter of law any comment, suggestion, or conclusion of a BPH psychological evaluation insufficient to disturb an overall "low risk" conclusion cannot justify a parole denial;

9.  Find that no evidence supports BPH's order for a new psychological evaluation nor additional self-help;

10. Hold that as a matter of law <u>all</u> panel findings and/or recommendations must be specified in the hearing transcript, not appear for the first time on the decision form;

11. Find that the oppositions of the prosecutor and victim here are not factors upon which to deny Bell parole;

12. Find that Bell's closing statement properly focused on why he believes he is suitable for parole;

13. Order discovery to investigate BPH's unwritten policy of denying parole at all hearings where a victim attends to oppose release; and,

//

1      14.  Order any other relief that the Court may deem appropriate in the interests

2           of justice.

3

4      Dated this __5th__ day of ____July____, 2008 , at Avenal, Kings County, California.

5

6

7

8                                               _____

9                                               STEVEN D. BELL,

10                                              Petitioner

11                                              *IN PRO SE*

12

13

14

15

16

17

18

19

20

21

22

23

1

## **VERIFICATION**

2

3       I, the undersigned, say:

4       I am the Petitioner in the above entitled action.  I have read the foregoing Brief

5   in Support and know the contents thereof; that the same is true of my knowledge,

6   except as to the matters which are therein stated on my information or belief, and as

7   to those matters, that I believe it to be true.  I declare under penalty of perjury that

8   the above is true and correct.

9       Dated this ___5th___ day of ___July_____, 2008, at Avenal, Kings County,

10  California.

11

12                              Steven D. Bell

13

14

15

16

## **CERTIFICATE OF COMPLIANCE**

17      I certify that pursuant to FRAP 32(a)(7)(C) and Ninth Circuit Rule 32-1, the

18  attached opening brief is proportionally spaced, has a typeface of 14 points or more,

19  and contains _12,925___ words (not to exceed 14,000), excluding Table of Contents,

20  Table of Authorities, and this Certification.

21  Date: _7/5/08_

22

23                              LaVonia Margala

1

## DECLARATION OF SERVICE

2        I, the undersigned, say:

3   I am a citizen of the United States, a resident of San Bernardino County, over 18

4   years of age, and not a party to this action. I reside at 1692 Carmel Circle West,

5   Upland, CA 91784.

6        On the date executed below, I served the PETITION FOR WRIT OF HABEAS

7   CORPUS copies thereof in a sealed envelope, postage thereon fully prepaid, in the

8   United States Mail at Upland, California, addressed as follows:

9

10  U. S. District Court            Steven D. Bell
11  Northern District of California Avenal State Prison, #J-69411, 120-236L
12  450 Golden Gate                 P. O. Box 9
13  San Francisco, CA 94102         Avenal, CA 93204
14

15  Attorney General of California
16  P. O. Box 944255
17  Sacramento, California  94244-2550

18

19        I declare under penalty of perjury that the foregoing is true and correct.

20   Executed on  7/5/08          , 2008,  at Upland, California.

21

22

23                               LaVonia Margala
24

25

26